UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WORD TO INFO, INC, <br><br>    Plaintiff, <br><br> v. <br><br> GOOGLE INC., <br><br>    Defendant. | Case No. 15-cv-03486-WHO <br><br> **ORDER ON PARTIAL MOTION TO DISMISS** <br><br> Re: Dkt. No. 15 |

**INTRODUCTION**

This is a patent infringement action in which plaintiff Word to Info, Inc. ("WTI") accuses defendant Google, Inc. of infringing seven related patents claiming techniques for natural language processing.[1]  Google filed this partial motion to dismiss seeking dismissal of: (1) WTI's

---

[1] The seven patents-in-suit are:

(1) U.S. Patent No. 5,715,468 entitled "Memory System for Storing and Retrieving Experience and Knowledge with Natural Language" (the '468 patent).

(2) U.S. Patent No. 6,138,087 entitled "Memory System for Storing and Retrieving Experience and Knowledge with Natural Language Utilizing State Representation Data, Word Sense Numbers, Function Codes and/or Directed Graphs" (the '087 Patent).

(3) U.S. Patent No. 6,609,091 entitled "Memory System for Storing and Retrieving Experience and Knowledge with Natural Language Utilizing State Representation Data, Word Sense Numbers, Function Codes and/or Directed Graphs" (the '091 Patent).

(4) U.S. Patent No. 7,349,840 entitled "Memory System for Storing and Retrieving Experience and Knowledge with Natural Language Utilizing State Representation Data, Word Sense Numbers, Function Codes, Directed Graphs and/or Context Memory" (the '840 Patent).

(5) U.S. Patent No. 7,873,509 entitled "Memory System for Storing and Retrieving Experience and Knowledge with Natural Language Utilizing State Representation Data, Word Sense Numbers, Function Codes, Directed Graphs, Context Memory, and/or Purpose Relations" (the '509 Patent).

(6) U.S. Patent No. 8,326,603 entitled "Memory System for Storing and Retrieving Experience and Knowledge with Natural Language Queries" (the '603 Patent).

(7) U.S. Patent No. 8,688,436 entitled "Memory System for Storing and Retrieving Experience and Knowledge by Utilizing Natural Language Responses" (the '436 Patent).

Dkt. No. 1 ("Compl.") at Exs. A-G.

willful infringement claims, on the ground that they are based exclusively on Google's alleged post-filing knowledge of the patents-in-suit; and (2) WTI's claims of infringement of the '091, '840, '509, '603, and '436 patents, on the ground that due to errors during the application process in describing the chain of priority for these patents, each is now invalid as a matter of law. I agree with Google that WTI's claims of willful infringement should be dismissed because they are based exclusively on Google's knowledge since the filing of the complaint, and I agree with WTI that a certificate of correction under 35 U.S.C. § 255 may be used to correct a mistaken or omitted "specific reference" for the purposes of 35 U.S.C. § 120. For those reasons, Google's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

WTI filed this action on December 15, 2014 in the United States District Court for the Northern District of Texas. Dkt. No. 1. While the case was still pending in that district, Google filed this partial motion to dismiss. Dkt. No. 13. The motion was fully briefed when the case was transferred to this district on July 29, 2015. Dkt. No. 56. On September 8, 2015, Google renoticed the motion for hearing, and I heard argument from the parties on September 23, 2015. Dkt. No. 82.

WTI claims that Google willfully infringes the '468, '091, and '840 patents. Compl. ¶¶ 23-24, 33-34, 39-40. Using identical language with respect to each of these three patents, WTI alleges that

> Google was made aware of the [patent] and its infringement thereof at least as early as the filing of this complaint.
>
> On information and belief, therefore, Google's continued infringement of the [patent] is willful and deliberate, entitling plaintiff to enhanced damages under 35 U.S.C. § 284 and attorneys' fees and nontaxable costs under 35 U.S.C. § 285.

*Id.* There are no other allegations in the complaint regarding willful infringement.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests,"

2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alterations omitted).

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). While a complaint "need not contain detailed factual allegations" to survive a Rule 12(b)(6) motion, "it must plead enough facts to state a claim to relief that is plausible on its face." *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009) (internal quotation marks and citations omitted). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

In considering whether a claim satisfies this standard, the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marines Ins. Co.*, 519 F.3d 1025, 1031) (9th Cir. 2008). However, "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins*, 568 F.3d at 1067 (internal quotation marks omitted). "[I]t is within [the court's] wheelhouse to reject, as implausible, allegations that are too speculative to warrant further factual development." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013).

**DISCUSSION**

**I.    WILLFUL INFRINGEMENT**

Google contends that WTI's claims of willful infringement of the '468, '091, and '840 patents should be dismissed because they are based exclusively on Google's alleged post-filing knowledge of the patents. *See* Mot. at 4-5 (Dkt. No. 15); Reply at 1-2 (Dkt. No. 39). I agree, and Google's motion to dismiss these claims is GRANTED.

Although patent infringement is a strict liability offense, a patentee may obtain enhanced damages where it establishes that the defendant's infringement was "willful." *In re Seagate Tech.*,

3

1 *LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007). A patentee claiming willful infringement must show
2 by clear and convincing evidence that the accused infringer "acted despite an objectively high
3 likelihood that its actions constituted infringement of a valid patent." *Id.* at 1371. "If this
4 threshold objective standard is satisfied, the patentee must also demonstrate that this objectively
5 defined risk . . . was either known or so obvious that it should have been known to the accused
6 infringer." *Id.* Because "a party cannot be found to have willfully infringed a patent of which the
7 party had no knowledge," *Gustafson Inc. v. Intersystems Indus. Products Inc.*, 897 F.2d 508, 511
8 (Fed. Cir. 1990) (internal quotation marks omitted), "[k]nowledge of the paten[t] is essential to a
9 claim of willful infringement," *Radware Ltd. v. A10 Networks Inc.*, No. 13-cv-02021-RMW, 2013
10 WL 5373305, at *6 (N.D. Cal. Sept. 24, 2013).

11 "[A] patentee must have a good faith basis for alleging willful infringement." *Seagate*,
12 497 F.3d at 1374 (citing Fed. R. Civ. P. 11). Accordingly, a willful infringement claim "in the
13 original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing
14 conduct." *Id.* In line with this rule, courts dismiss willfulness claims in original pleadings where
15 the defendant's only alleged basis for knowing of the patents-in-suit is the filing of the action
16 itself. *See, e.g., CAP Co. v. McAfee, Inc.* No. 14-cv-05068-JD, 2015 WL 3945875, at *2 (N.D.
17 Cal. June 26, 2015) (dismissing willful infringement claims where the patentee "does not allege
18 that defendants had any pre-suit knowledge of the patents"); *Touchscreen Gestures LLC v.
19 Research in Motion Ltd.*, No. 12-cv-00263, 2013 WL 8505349, at *2 (E.D. Tex. Mar. 27, 2013)
20 ("[T]he complaint presents no facts supporting that [plaintiff] had a good faith basis for alleging
21 willful infringement. The absence of any allegation of pre-filing knowledge of the patents is fatal
22 to [plaintiff's] willful infringement claims."); *Select Retrieval LLC v. L. L. Bean Inc.*, No. 12-cv-
23 00003, 2012 WL 5381503, at *5 (D. Me. Oct. 31, 2012) ("The complaint does not provide any
24 facts as to the defendant's conduct before October 17, 2011, when the Plaintiff originally filed this
25 lawsuit. Without such facts, the plaintiff has not plausibly pleaded its claim of willful
26 infringement.").

27 Like the willful infringement claims in these cases, WTI's willful infringement claims fail
28 because they are based exclusively on Google's alleged post-filing knowledge of the relevant

4

patents. WTI claims that Google knew of the '468, '091, and '840 patents "at least as early as the filing of this complaint." Compl. ¶¶ 23-24, 33-34, 39-40. The complaint contains no other allegations regarding Google's knowledge of or conduct with respect to the relevant patents. This is far from enough to plausibly establish that Google has willfully infringed. "The absence of any allegation of pre-filing knowledge of the patents is fatal to [WTI's] willful infringement claims." *Touchscreen*, 2013 WL 8505349, at *2.

The cases cited by WTI do not call for a different result. The bulk of them concern situations where the defendant learned of the patents-in-suit from some source other than the complaint under review. *See, e.g., MyMedicalRecords Inc. v. Jardogs LLC*, 1 F. Supp. 3d 1020, 1026 (C.D. Cal. 2014) (denying motion to dismiss willfulness claim in second amended complaint, where defendant allegedly learned of patents from previous complaints). The rest address a different issue – i.e., whether under *Seagate* a patentee must seek a preliminary injunction to prevail on a willful infringement claim based on post-filing conduct. *See, e.g., DataQuill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999, 1014-17 (S.D. Cal. 2011) (rejecting argument that "*Seagate* creates a per se bar to any claim for willful infringement based on post-filing conduct where the patentee did not seek a preliminary injunction"). Because these cases are either easily distinguishable from this one, or are inapplicable at this juncture, they do not help WTI.[2]

All claims of willful infringement in the complaint are DISMISSED. In case WTI knows of facts that have not yet been pleaded that provide a good faith basis for accusing Google of willful infringement based on pre-filing conduct, I will grant LEAVE TO AMEND. If WTI develops a good faith basis for accusing Google of willful infringement based on post-filing conduct, it may seek leave to add such claims under Federal Rule of Civil Procedure 15.

---

[2] With respect to the issue of whether a patentee must seek a preliminary injunction to prevail on a willful infringement claim based on post-filing conduct, Google concedes "that a patent can be willfully infringed after litigation has commenced" but reserves the right to oppose any such allegations in this case, if WTI decides to raise them. *See* Reply at 2, 2 n.2. I agree with Google that whether WTI may bring willful infringement claims in this case despite not having moved for a preliminary injunction is speculative at this juncture, and I do not address the issue here.

## II. 35 U.S.C. § 120

### A. Google's Argument

Google moves to dismiss WTI's claims of infringement of the '091, '840, '509, '603, and '436 patents, on the ground that due to errors during the application process in describing the chain of priority for these patents, each is now invalid as a matter of law.

Some additional background is necessary to appreciate Google's argument. The seven patents-in-suit are related to one another through a chain of patent applications. *See* Mot. at 6. The first application in the chain, for the '468 patent, was filed on September 30, 1994. *Id.* The applications for each of the subsequent six patents-in-suit states that it is a continuation of one or more of the prior applications in the chain. *Id.*

A continuation application "is a second application for the same invention claimed in a prior nonprovisional application." MPEP § 201.07 (9th ed. 2014). The continuation must be filed before the prior nonprovisional application is abandoned or patented. *Id.* Google states that "continuation applications are part of a well-established practice of allowing inventors to file new patent applications based on the disclosures of previous applications, without having the previous applications be treated as invalidating prior art." Mot. at 6.

35 U.S.C. § 120 sets forth the basic requirements for continuation applications:

> An application for patent for an invention disclosed . . . in an application previously filed in the United States . . . which names an inventor or joint inventor in the previously filed application shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application.
>
> No application shall be entitled to the benefit of an earlier filed application under this section unless an amendment containing the specific reference to the earlier filed application is submitted at such time during the pendency of the application as required by the Director. The Director may consider the failure to submit such an amendment within that time period as a waiver of any benefit under this section. The Director may establish procedures . . . to accept an unintentionally delayed submission of an amendment under this section.

1    35 U.S.C. § 120 (paragraphing added).[3]

2    Google's argument focuses on the section 120 requirement that the continuation "contain[n] or [be] amended to contain a specific reference to the earlier filed application." 35 U.S.C. § 120.  In *Medtronic CoreValve LLC v. Edwards Lifesciences Corp.*, 741 F.3d 1359 (Fed. Cir. 2014), the Federal Circuit construed this requirement to mean that where a continuation claims an earlier priority date through a chain of earlier filed applications, the continuation must "specifically reference each earlier filed application . . . in the chain of priority." *Id.* at 1367; *see also Encyclopaedia Britannica*, 609 F.3d at 1352 (holding that the section 120 specific reference requirement mandates that "each application in the chain of priority . . . refer to the prior applications").

    The applications for the patents-in-suit were filed, and the patents were issued, in the following order: (1) '468 patent (filed Sep. 30, 1994; issued Feb. 3, 1998); (2) '087 patent (filed Sep. 24, 1997; issued Oct. 24, 2000); (3) '091 patent (filed Sep. 27, 2000; issued Aug. 19, 2003); (4) '840 patent (filed Aug. 8, 2003; issued Mar. 25, 2008); (5) '509 patent (filed Mar. 20, 2008; issued Jan. 18, 2011); (6) '603 patent (filed Jan. 14, 2011; issued Dec. 4, 2012); and (7) '436 patent (filed Nov. 30, 2012; issued Apr. 1, 2014). *See* Compl. ¶¶ 9-15, Exs. A-G.

    The '087 patent application, the '091 patent application, and the '840 patent application each made specific reference only to the '468 patent application – the '091 patent application did not reference the '087 patent application, and the '840 patent did not reference either the '091 patent application or the '087 patent application.

    On this ground, Google contends that the '091 and '840 patents are not entitled to the priority date of the '468 patent and, hence, are anticipated and invalidated by the '468 patent, which was issued on February 3, 1998, before the applications for the '091 and '840 patents were filed. *See* Mot. at 16-18.

---

[3] Congress amended section 120 in 1999 to add the second paragraph quoted above.  Both parties emphasize that the amendment did not "change the basic requirements for entitlement to the benefit of a prior application's filing date," *Encyclopaedia Britannica, Inc. v. Alpine Electronics of Am., Inc.*, 609 F.3d 1345, 1351 (Fed. Cir. 2010), and that the analysis for the purposes of this motion is materially identical under either version of the statute. *See, e.g.,* Mot. at 7, 14; Opp. at 5.  Accordingly, I focus my analysis on the current version.

Google then takes its argument a step further. It acknowledges that the applications for the '509, '603, and '436 patents (in contrast with the applications for the '091 and '840 patents) correctly listed all earlier filed applications in the chain of priority. *See* Mot. at 18-20. Nevertheless, Google contends that these patents are also anticipated and invalidated by the '468 patent, because the defects in the applications of the '091 and '840 patents destroy the whole chain of priority. *See id.*

The '091 and '840 patents were issued in 2003 and 2008, respectively. Compl. ¶¶ 11-12. Google does not dispute that the inventor of the '091 and '840 patents obtained certificates of correction in 2012 and 2013 adding a complete and correct chain of priority to each patent. *See* Mot. at 11-12. Under 35 U.S.C. § 255,

> [w]henever a mistake of a clerical or typographical nature, or of minor character, which was not the fault of the Patent and Trademark Office, appears in a patent and a showing has been made that such mistake occurred in good faith, the Director may, upon payment of the required fee, issue a certificate of correction, if the correction does not involve such changes in the patent as would constitute new matter or would require re-examination. Such patent, together with the certificate, shall have the same effect and operation in law on the trial of actions for causes thereafter arising as if the same had been originally issued in such corrected form.

35 U.S.C. § 255. According to Google, however, a certificate of correction under section 255 cannot be used to correct a defective chain of priority in a continuation application. Google states that this is because of the section 120 requirement that "[n]o application shall be entitled to the benefit of an earlier filed application . . . unless an amendment containing the specific reference to the earlier filed application is submitted at such time *during the pendency of the application* as required by the Director." 35 U.S.C. § 120 (emphasis added). Google contends that "[t]his sentence unambiguously requires that any amendment to an application to seek the benefit of an earlier filing date must be made while the application is still pending," not through a section 255 certificate of correction after the patent has been issued. *See* Mot. at 12.

**B.    WTI's Response**

WTI disputes only one aspect of Google's argument – that the inventor's certificates of correction were ineffective to correct the priority chains stated in the '091 and '840 patents.

8

According to WTI, a section 255 certificate of correction may be used to correct a mistaken or omitted "specific reference" for the purposes of section 120.

Among other points, WTI emphasizes that section 120 provides only that "[t]he Director *may* consider the failure to submit such an amendment within that time period as a waiver of any benefit under this section." *Id.* (emphasis added). WTI also notes that pursuant to the final sentence of section 120, "[t]he Director may establish procedures . . . to accept an unintentionally delayed submission of an amendment under this section." *Id.*

### C. Analysis

While neither party cites any binding authority that squarely addresses this issue, I am persuaded that WTI has the better argument. Google's position is based on a hypertechnical reading of sections 120 and 255 that ignores longstanding PTO practice as well as the case law that exists concerning the interaction between the two statutes.

First, as WTI points out, section 120 does not *require* the PTO to consider the failure to identify the correct chain of priority in a continuation as a waiver of the earlier priority date. It provides only that "[t]he Director *may* consider the failure to submit such an amendment within that time period as a waiver of any benefit under this section." 35 U.S.C. § 120 (emphasis added). It also authorizes "[t]he Director [to] establish procedures . . . to accept an unintentionally delayed submission of an amendment under this section." *Id.*

Google attempts to neutralize these sentences through a complicated argument that distinguishes between a mandatory statutory deadline prescribed by section 120 itself, and a discretionary administrative deadline that section 120 authorizes the PTO to create. *See* Reply at 4-7. Google numbers the three sentences in the second paragraph of section 120 as follows:

> [1] No application shall be entitled to the benefit of an earlier filed application under this section unless an amendment containing the specific reference to the earlier filed application is submitted at such time during the pendency of the application as required by the Director. [2] The Director may consider the failure to submit such an amendment within that time period as a waiver of any benefit under this section. [3] The Director may establish procedures . . . to accept an unintentionally delayed submission of an amendment under this section.

*Id.* at 4. Google explains that sentence [1] authorizes the PTO to set an administrative deadline

1   "during the pendency of the application" by which an amendment correcting a priority chain must

2   be submitted. *Id.* Google states: "This empowers the [PTO] to set an administrative deadline that

3   can be earlier then the statutory deadline" – the statutory deadline being before patent issuance. *Id.*

4   Google then argues that the discretion reflected in the "may" in sentence [2], as well as the

5   procedures for accepting "an unintentionally delayed submission" authorized by sentence [3],

6   apply only to failures to comply with the administrative deadline, not with the statutory deadline.

7   According to Google, "[t]hese sentences authorize the [PTO] to accept amendments correcting

8   priority claims that are submitted after the administrative deadline, but they do not change the

9   statutory deadline of patent issuance." *Id.* at 5.

10   This argument is not convincing. Even assuming that Google is right to distinguish

11   between administrative and statutory deadlines for the purposes of section 120, it does not

12   necessarily follow that sentences [2] and [3] apply only when the amendment is submitted before

13   the patent is issued. The textual basis for such a reading of sentence [2] is tenuous at best, and

14   there is nothing in sentence [3] to indicate that the procedures it authorizes may not be applied to

15   amendments submitted post-issuance.

16   Further, even if section 120 did not authorize the PTO to allow post-issuance correction of

17   priority chains, section 255 still would. Google argues that section 255 cannot be used to fix

18   section 120 mistakes because "certificates of correction apply only to *patents*, not *applications*."

19   Reply at 6 (emphasis in original). Google cites no authority for this argument, and I have not

20   found any. Moreover, as discussed in more detail below, Google's construction of section 255 is

21   at odds with the Federal Circuit's analysis in *E.I. du Pont de Nemours & Co. v. MacDermid*

22   *Printing Solutions L.L.C.*, 525 F.3d 1353 (Fed. Cir. 2008), which implicitly recognized that a

23   certificate of correction under 35 U.S.C. § 254 can be used to fix priority chain mistakes under 35

24   U.S.C. § 119(e)(1). The relevant language in sections 254 and 119(e)(1) is identical to that in

25   sections 255 and 120: both section 254 and section 255 concern "patent[s]," and both section 120

26

27

28

and section 119(e)(1) concern "application[s]."[4,5]

Google's position is further weakened by the lack of case law Google cites in support of it. Google relies principally on *Medtronic* and *Encyclopaedia Britannica*, another case involving a

---

[4] Section 254, like section 255, authorizes the PTO to issue certificates of correction. The key difference between the statutes is that section 254 applies to mistakes "incurred through the fault of the [PTO]." 35 U.S.C. § 254. The statute provides:

> Whenever a mistake in a patent, incurred through the fault of the Patent and Trademark Office, is clearly disclosed by the records of the Office, the Director may issue a certificate of correction stating the fact and nature of such mistake, under seal, without charge, to be recorded in the records of patents. A printed copy thereof shall be attached to each printed copy of the patent, and such certificate shall be considered as part of the original patent. Every such patent, together with such certificate, shall have the same effect and operation in law on the trial of actions for causes thereafter arising as if the same had been originally issued in such corrected form. The Director may issue a corrected patent without charge in lieu of and with like effect as a certificate of correction.

35 U.S.C. § 254.

[5] Section 119(e)(1) enables a nonprovisional application to claim the priority date of an earlier filed provisional application where, among other requirements, the nonprovisional application "contains or is amended to contain a specific reference to the provisional application." 35 U.S.C. § 119(e)(1). The version of the statute in effect at the time the nonprovisional patent application at issue in *MacDermid* was filed in 2002 (and at the time the case was decided in 2008) provided that

> [a]n application for patent filed under section 111(a) or section 363 of this title for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in a provisional application filed under section 111(b) of this title, by an inventor or inventors named in the provisional application, shall have the same effect, as to such invention, as though filed on the date of the provisional application filed under section 111(b) of this title, if the application for patent filed under section 111(a) or section 363 of this title is filed not later than 12 months after the date on which the provisional application was filed and if it contains or is amended to contain a specific reference to the provisional application. No application shall be entitled to the benefit of an earlier filed provisional application under this subsection unless an amendment containing the specific reference to the earlier filed provisional application is submitted at such time during the pendency of the application as required by the Director. The Director may consider the failure to submit such an amendment within that time period as a waiver of any benefit under this subsection. The Director may establish procedures, including the payment of a surcharge, to accept an unintentionally delayed submission of an amendment under this subsection during the pendency of the application.

35 U.S.C. § 119(e)(1) (effective Nov. 29, 2000 to Dec. 17, 2013).

11

1    chain of priority defect under section 120. These cases are clearly relevant to other aspects of

2    Google's argument – i.e., whether the applications for the '091 and '840 patents were required to

3    identify other applications in the chain, and whether their failure to do so impacts the priority dates

4    for the '509, '603, and '436 patents. But the cases say little, if anything, about the one aspect of

5    Google's argument that WTI actually disputes – i.e., whether a section 255 certificate of

6    correction may be used to correct a defective chain of priority under section 120. The patentees in

7    *Medtronic* and *Britannica* did not seek or obtain certificates of correction, and Google identifies

8    nothing in either decision that speaks to the interaction between sections 120 and 255. The cases

9    do not help Google.

10       Meanwhile, as WTI highlights and Google does not dispute, the PTO has allowed

11   patentees to use section 255 certificates of correction to correct section 120 priority chains since at

12   least as early as 1976. *See In Re Lambrech*, 202 U.S.P.Q. 620 (1976); *see also Worlds Inc. v.

13   Activision Blizzard Inc.*, No. 12-cv-10576, 2014 WL 972135, at *9 (D. Mass. Mar. 13, 2014)

14   (recognizing the prospective effectiveness of a section 255 certificate of correction issued by the

15   PTO to correct a section 120 specific reference mistake); *Pfizer Inc. v. Teva Pharm. U.S.A., Inc.*,

16   882 F. Supp. 2d 643, 696-99 (D. Del. 2012) (same); *Carotek Inc. v. Kobayashi Ventures LLC*, 875

17   F. Supp. 2d 313, 335-36 (S.D.N.Y. 2012) (same); *Adrain v. Hypertech Inc.*, No. 98-cv-37C, 2001

18   WL 740542, at *2-5 (D. Utah Apr. 18, 2001) (same). The most recent version of the Manual of

19   Patent Examining Procedures ("MPEP") provides that a certificate of correction under either

20   section 255 or section 254 can be used, "with respect to 35 U.S.C. § 120 priority, to correct . . . the

21   failure to make reference to a prior copending application" in an application filed either before

22   November 29, 2000 or on or after November 29, 2000 and before March 16, 2013, so long as "all

23   requirements set forth in [the relevant version of 37 C.F.R §. 1.78(a)(1)] have been met in the

24   application which became *the patent to be corrected*," and it is "clear from the record of *the patent

25   and the parent application(s)* that priority is appropriate." MPEP § 1481.03(II)(B)-(C) (9th ed.

26   2014) (emphasis added). This instruction plainly indicates that, insofar as the PTO is concerned, a

27   section 255 certificate of correction can be used to correct a section 120 chain of priority defect

28

even after patent issuance.[6]

WTI's argument is further supported by *MacDermid*, the one Federal Circuit decision cited by either party that is factually similar to this case.  In *MacDermid*, the patentee filed a provisional application followed by a nonprovisional application, but due to PTO mistake, the issued patent did not reference the provisional application.  525 F.3d at 1355.  The patentee sought and obtained a certificate of correction under section 254 to add a reference to the provisional application in accordance with section 119(e)(1).  In upholding the effectiveness of the certificate of correction, the Federal Circuit rejected the defendants' argument that the mistake was the patentee's and not the PTO's.  The court stated:

> We hold that a lack of diligence during prosecution, at least under the facts of this case, does not convert a PTO error into an applicant error for the purpose of seeking a post-issuance certificate of correction.
>
> It is, of course, desirable to have applicants correct the PTO's mistakes in pending applications as soon as possible so that the correct information is reflected in published applications and issued patents. Nevertheless, nothing in [section 254] conditions eligibility for a certificate to correct PTO error on the applicant's diligence in

---

[6] In contrast with its instruction regarding section 120 priority, the MPEP instructs that a certificate of correction "is NOT a valid mechanism for adding or correcting a priority claim under 35 U.S.C. § 119(e) after a patent has been granted on an application filed on or after November 29, 2000." MPEP § 1481.03(II)(B) (capitalization as in original).  In support of this instruction, the MPEP points to the version of section 119(e)(1) that was in effect between November 29, 2000 and December 17, 2013.  *See id.*  That version used language materially identical to the second paragraph of the current version of section 120, with one crucial difference, italicized below:

> No application shall be entitled to the benefit of an earlier filed provisional application under this subsection unless an amendment containing the specific reference to the earlier filed provisional application is submitted at such time during the pendency of the application as required by the Director. The Director may consider the failure to submit such an amendment within that time period as a waiver of any benefit under this subsection. The Director may establish procedures . . . to accept an unintentionally delayed submission of an amendment under this subsection *during the pendency of the application.*

35 U.S.C. § 119(e)(1).  The MPEP highlights this italicized phrase in the last sentence in stating that a certificate of correction cannot be used to add or correct a priority claim under section 119(e).  *See* MPEP § 1481.03(II)(B).  Section 120, by contrast, omits the italicized phrase from its last sentence, instead providing simply that "[t]he Director may establish procedures . . . to accept an unintentionally delayed submission of an amendment under this section."  35 U.S.C. § 120.

13

> correcting the mistake, and the statute does not set any time limit for seeking such corrections.

*Id.* at 1361-62.

*MacDermid* is not a perfect fit for this case, in that it concerns a certificate of correction under section 254 (as opposed to section 255) to correct a specific reference error under section 119(e)(1) (as opposed to section 120). *MacDermid* also does not squarely address whether a section 119(e)(1) mistake can be corrected by a section 254 certificate of correction – the court appears to have merely assumed that it can be.

Nevertheless, the similarities between sections 254 and 255, and between sections 119(e)(1) and 120, make the case instructive here. Both sections 254 and 255 provide that the corrected "*patent* . . . shall have the same effect and operation in law on the trial of actions for causes thereafter arising as if the same had been originally issued in such corrected form." 35 U.S.C. §§ 254, 55 (emphasis added). And both sections 119(e)(1) and 120 require that the "*application* . . . contai[n] or [be] amended to contain a specific reference to the [provisional / earlier filed] application." 35 U.S.C. §§ 119(e)(1), 120 (emphasis added). Despite section 254 referencing "patents" and section 119(e)(1) referencing "applications," the Federal Circuit did not hold that a section 254 certificate of correction could not be used to fix a section 119(e)(1) mistake. To the contrary, the court implicitly recognized that it could be, and stated that section 254 "does not set any time limit for seeking . . . corrections." *MacDermid*, 525 F.3d at 1361-62. Given the similarities between sections 254 and 255, and between sections 119(e)(1) and 120, *MacDermid* casts serious doubt on Google's argument that a section 255 certificate of correction

14

1 cannot be used to fix section 120 mistakes because "certificates of correction apply only to

2 patents, not applications."  Reply at 6.[7]

3       In sum, Google has not shown that a section 255 certificate of correction cannot be used to

4 correct a defective chain of priority under section 120.  Google does not dispute that the

5 certificates of correction for the '091 and '840 patents otherwise complied with section 255.

6 Accordingly, Google's motion to dismiss WTI's claims of infringement of the '091, '840, '509,

7 '603, and '436 patents is DENIED.

## CONCLUSION

9       For the foregoing reasons, Google's motion to dismiss is GRANTED IN PART and

10 DENIED IN PART.  WTI shall file an amended complaint, if any, within 20 days of the date of

11 this Order.

12       **IT IS SO ORDERED**.

13 Dated: October 19, 2015



WILLIAM H. ORRICK
United States District Judge

---

[7] At the hearing, Google also argued that a section 255 certificate of correction may not be used to fix a section 120 specific reference mistake because such a mistake is not one "of a clerical or typographical nature, or of minor character," within the meaning of section 255.  *See* 28 U.S.C. § 255.  Google cited no case or other authority that has agreed with this argument, and at least two administrative decisions have rejected it.  *See In Re Schuurs & Van Weemen*, 218 U.S.P.Q. 443 (1983); *Lambrech*, 202 U.S.P.Q. 620 ("Omission of a reference to an earlier application on which priority is based is a mistake 'of a minor character' which is correctable by certificate."); *see also* MPEP § 1481.03(II)(B)-(C) (9th ed. 2014).  While I recognize that, under cases like *Medtronic* and *Encyclopaedia Britannica*, an uncorrected specific reference mistake may result in the invalidation of a patent, I am not persuaded that this means that such a mistake is beyond the scope of section 255.  Absent authority to the contrary, I am satisfied that the specific reference mistakes at issue here were sufficiently minor to be addressed by certificates of correction.